## John Becker et al., Plffs. in Err., v. Commonwealth of Pennsylvania.

Burglary with intent to commit larceny, and larceny actually consummated, may be charged in the same count in an indictment.

Evidence of previous good character must, in order to justify an acquittal of a criminal charge, be such positive evidence as to produce in the minds of the jury, a reasonable doubt of the defendant's guilt.

In the absence of a specific request for instructions to the jury a charge may be free from error although particularizing the evidence of the commonwealth and referring to the evidence of the defendant in general terms only.

(Argued April 28, 1887.  Decided May 9, 1887.)

January Term, 1887, No. 41, E. D., before MERCUR, Ch. J., GORDON, TRUNKEY, STERRETT, GREEN, and CLARK, JJ.  Error to the Oyer and Terminer of Northumberland County to review a judgment on a verdict of guilty in an indictment for larceny.  Affirmed.

The indictment contained three counts, the first of which was as follows:

"The grand inquest of the commonwealth of Pennsylvania, inquiring for the county of Northumberland, upon their oaths and affirmations, respectively, do present that John Becker and August Broskie, late of said county, yeomen, on the 6th day of September, in the year of our Lord 1886, about the hour of 12 o'clock in the night of the same day, at the county aforesaid, and within the jurisdiction of this court, with force and arms, etc., the dwelling house of one Jacob Stank, in the borough of Shamokin, at the county aforesaid, and within jurisdiction of the court aforesaid, then and there situate, unlawfully, wilfully, maliciously, feloniously, and burglariously did break and enter, with intent the goods and chattels, moneys and property of him,

NOTE.—A count is not rendered double by charging matters of aggravation.  Cases in line with Becker v. Com. are found in Com. v. Carson, 166 Pa. 179, 30 Atl. 985; Hollister v. Com. 60 Pa. 103; Com. v. Solby, 15 W. N. C. 392; Stoops v. Com. 7 Serg. & R. 491, 10 Am. Dec. 482; Com. v. Guernsey, 8 Lack. Legal News, 17.

See also editorial note to Herman v. People, 9 L. R. A. 182, relating to joinder of separate defenses.

the said Jacob Stank, in the said dwelling house, then and there being, feloniously and burglariously to steal, take, and carry away, and then and there in the said dwelling house, twelve pieces of the current gold coin of the United States, of the denomination of $20 each, and of the value of $20 each of the currency current in this commonwealth, together of the value of $240; divers promissory notes payable to bearer on demand, current as money in the said commonwealth, of the amount and value of $290, a more particular description of which is to the jury unknown; altogether of the value of $530 of the goods and chattels, moneys and property of him, the said Jacob Stank, in the said dwelling house then and there being found, feloniously and burglariously did steal, take, and carry away, contrary to the form of the act of the general assembly, in such case made and provided, and against the peace and dignity of the commonwealth of Pennsylvania."

September 16, 1886, before plea or arraignment, the counsel for the defendants moved the court to quash the first count of the indictment, because it contains two offenses, to wit, one of burglary and the other larceny. The motion was overruled. Exception. First assignment of error.

The defendants pleaded not guilty.

The facts as they appeared at the trial before ROCKEFELLER, P. J., were as follows:

Jacob Stank, the prosecutor, on the 15th of September, 1885, was the keeper of a boarding house in the fourth ward of the borough of Shamokin; at that time he had sixteen boarders, among whom was a brother of Mrs. Stank, who was married on the evening of the above date. There were present at the wedding, which was held at the prosecutor's house, from twenty-seven to thirty-five persons, as variously estimated by the witnesses. Among the guests were two men, acquaintances of Stank, who at one time had boarded with them, one of whom had some money, said to be $27, which he gave to Mrs. Stank to take care of for him, which she took and placed in a trunk for safe keeping. This trunk was in a bedroom occupied by the Stanks on the first floor of the house, and it was shown that in addition to this $27 the Stanks had the sum of $530, which was deposited in this same trunk. Among the guests at the party were August Broskie and John Becker, the defendants.

It was shown on the part of the commonwealth that in the

course of the evening the party ran short of refreshments, and that Mrs. Stank's brother came into the bedroom where the trunk was and asked Mrs. Stank, in the presence of both the defendants, and who, probably with some other guests, were present with her in the bedroom, for money to buy more beer; whereupon, Mrs. Stank went to the trunk and took out a stocking containing $530 and opened it in the presence of the defendants and her brother, and she, not knowing the denominations of the money, requested Broskie, one of the defendants, to select therefrom the required amount. Broskie picked out a five dollar bill, which was handed to the brother, and the balance of the money was replaced in the presence of the defendants in the trunk. Afterwards, in the course of the evening, Becker, one of the defendants, spoke to the prosecutor and his wife about a house that he owned, and offered to sell it to them for $1,000, and was informed that the amount of money belonging to them was $450. The festivities were continued until nearly 12 o'clock at night, when the guests, including the defendants, left the house, and the inmates, including the boarders, the two visitors, and the prosecutor and his wife, retired to rest, the visitors and Stank and his wife occupying the same bedroom on the first floor, in which the trunk was located. After being absent from the house about an hour, Becker and Broskie, the defendants, returned together and entered the house and proceeded to the prosecutor's bedroom, and finding Mrs. Stank there in bed, they went to her and induced her to drink two glasses of porter, although it was conclusively shown that she was already intoxicated, as was, in fact, the prosecutor, and possibly everyone else in the house. Afterwards the defendants were induced to leave the house. That same night, after the party had dispersed, the house of Stank was entered through the window to the bedroom occupied by Stank and his wife, and the trunk containing the money was carried out, and the next morning was found about one square from Stank's house, and the stocking containing the $530 was taken therefrom.

Further evidence was given connecting defendants with the crime charged, all of which was particularized and commented on by the judge in his charge; whereas, the evidence given in behalf of defendants was referred to in general terms only. There were no requests for specific instructions on the part of defendants.

The court, *inter alia,* charged the ury as follows:

[The defendants also gave in evidence some testimony as to their previous good character as honest men. In all criminal cases defendants are allowed to give this kind of evidence. It is evidence that is allowed in order to disprove guilt, and is said to be positive evidence. It may of itself produce what is called reasonable doubt, and may result in producing an acquittal. The evidence of character is a matter of course to be taken into consideration by the jury in determining the guilt or innocence of the defendant. Of course, if a man is proved guilty—if the jury is satisfied beyond a reasonable doubt of his guilt—he must be convicted and punished, no difference what his previous good character may have been.]

Now, you will take into consideration all the evidence, and give these defendants a fair and impartial trial, and endeavor to render a true verdict between the commonwealth of Pennsylvania and the defendants. You, of course, realize the importance of the case to the community and to society, as well as the defendants. I need scarcely refer you to the fact of this being an important case on all sides. If you believe the defendants are guilty beyond a reasonable doubt, then you will not hesitate to find them guilty. If, however, as I stated, you have a reasonable doubt, fairly arising from the evidence, you will acquit them.

Verdict, guilty as charged in the first count of the indictment; and sentence accordingly.

The second assignment of error specified the portion of the charge inclosed in brackets.

The third assignment of error specified the action of the court in the general charge to the jury particularizing the evidence of the commonwealth, and referring to the evidence of the defendants in general terms only, with one or two exceptions, which had a tendency to cause, and actually did cause, an unfavorable impression in the mind of the jury, inconsistent with the well-known rule, that all men are presumed to be innocent, etc.

*S. B. Boyer,* for plaintiffs in error.—The first count of the indictment in this case is a common-law indictment. 1 Whart. Indictments, 4th ed. 368.

Burglary is classified among the offenses against real property, and is exclusively triable in a court of oyer and terminer; while larceny is classified as an offense against personal property.

The 135th section of the act of March 31, 1860, provides: "If any person shall, by night, wilfully and maliciously, break or enter into . . . or dwelling house, or out house, parcel of said dwelling house, with an intent to kill, rob, steal, or commit a rape, or any felony whatever, whether the felonious intent be executed or not, the person so offending shall, on conviction, be adjudged guilty of felonious burglary, and be sentenced to pay a fine not exceeding $1,000, and to undergo an imprisonment, by separate or solitary confinement at labor, not exceeding ten years."

Section 103 of the same act provides: "If any person shall be guilty of larceny, he shall, on conviction, be deemed guilty of felony, and be sentenced to pay a fine not exceeding $500, and to undergo an imprisonment, by separate or solitary confinement at labor, not exceeding three years."

It will thus be seen, at a glance, that the maximum punishment is unlike in both sections; in the former, a fine of not exceeding $1,000 and a confinement not exceeding ten years may be imposed, and in the latter a fine not exceeding $500, and a confinement not exceeding three years.

"Burglary is the breaking and entering the dwelling house of another in the nighttime, with intent to commit a felony therein, whether the felony be actually committed or not." "Larceny is the felonious taking and carrying away of the personal goods of another."

In the case at bar the felony was committed, and it would be a reasonable presumption that the burglary and larceny were committed by one and the same party.

Or, supposing the burglary was committed by one person and the larceny by another, both detected, and both were indicted before the same grand jury at the same time, and both indicted according to the count in question—would it be proper for the grand jury to return a bill of the same kind against both, where one of the parties committed the burglary, and the other the larceny, when they were not associates in the commission of the crime?

A grand jury may *ignoramus* one count of an indictment,

but cannot find less than the whole of any one count. Com. v. Keenan, 67 Pa. 203.

There are no objections to joining burglary and larceny and other offenses, in separate counts, when based on the same transaction. Henwood v. Com. 52 Pa. 424.

A count in an indictment which charges two distinct offenses is bad; and a defendant, on motion to quash, or demurrer, can defeat it. Thus, when to horse stealing and ordinary larceny different penalties are fixed, to join the two in one count is a good cause for arresting judgment. Wharton, Crim. Pl. & Pr. 8th ed. § 243.

The court, in its charge to the jury, very seriously erred upon the question of good character. If the court had said: If you believe that the testimony on the part of the commonwealth has made out the offense charged in the indictment, beyond a reasonable doubt, it will become your duty, after that, to consider the evidence of the defendants' previous good character, and after a careful reasoning of that evidence, with all the other evidence in the case; and if, in your opinion, this evidence of previous good character will create a reasonable doubt in your minds of their guilt, then your verdict must be not guilty—an instruction of this kind would have been strictly within Heine v. Com. 91 Pa. 145.

If a defendant in a criminal court is not proven guilty beyond a reasonable doubt, he is not required to offer any evidence. He calls witnesses to raise or create a doubt; and as soon as the doubt is created by the evidence, he is to be acquitted.

Character is entitled to consideration in every criminal case, and it is for the jury to assign its value upon a comparison of all the facts and circumstances which envelop the transaction. Whether in any particular instance it will avail to satisfy them of the innocence of the accused, or whether it will suffice to create or to confirm a rational doubt of guilt, or whether it be not adequate to overbear, in any respect, the weight of adverse testimony, must be left to their sound discretion, under proper advice. United States v. Gunnell, 5 Mackey, 196.

A careful examination of the charge, as a whole, will show that it is likely the jury misunderstood the court to the injury of the prisoners. In such cases the supreme court will reverse. Pannell v. Com. 86 Pa. 260.

The court is not bound to refer to witnesses by name, or par-

ticularize the evidence; but when done on one side and not on the other, it will undoubtedly mislead a jury. In a capital case; if the charge, though correct in the abstract, may, from the manner in which the idea is expressed, have misled the jury, the judgment must be reversed. Pistorius v. Com. 84 Pa. 158.

*P. A. Mahon,* District Attorney, and *W. H. M. Oram,* for the commonwealth, defendant in error.—The form of the first count in the indictment in this case has received the sanction of the courts, both in England and America, for the last two hundred years, and has been recommended by Chief Justice HALE as not only proper but absolutely necessary, when the charge is a burglarious entry and stealing. 1 Hale, P. C. 559, 590.

This form has been ratified by the courts of this state, as well as every state in the Union, where there is any reported case upon the subject. Nor does there appear to be a single case in the books where a contrary view has been even hinted at. In 1822 Justice DUNCAN said: "The charge is for a burglarious entry, with the intent to steal, and then and there stealing. It is all one offense, and one burglary; the only crime laid is burglary." Stoops v. Com. 7 Serg. & R. 499, 10 Am. Dec. 482.

There is nothing in our present Penal Code which changes the law in this respect, but much to confirm it, as we shall presently show.

In Hollister v. Com. 60 Pa. 103, where the indictment was identical in form with this, Chief Justice THOMPSON said that "it was argued that there is embraced in this charge of burglary a charge of larceny. This is true; and it is not to be denied that a conviction by the jury of the minor offense would be sustained." Hollister v. Com. 60 Pa. 103. See also Com. v. Solby, 15 W. N. C. 392.

We admit that the general rule undoubtedly is that two distinct crimes or offenses cannot properly be joined in the same count of the indictment, and that such joinder will be fatal on demurrer or motion to quash, but this rule is by no means of universal application; and one of the exceptions, as well established as the rule itself, is that burglary and larceny committed at the same time may be thus united. In such case the burglarious entry, with the intent to steal, and the consummation of that intent by actual theft, are so connected that the two crimes, may be charged in the same count, in order, it is said, to con-

vict of one on a failure to establish the other. Breese v. State, 12 Ohio St. 146, 80 Am. Dec. 340.

In the above case it is said that in Stoops v. Com. 7 Serg. & R. 499, 10 Am. Dec. 482, "only one offense is charged in said indictment, and that is burglary."

In Rex v. Withal, 1 Leach C. L. 88, it is said: "The larceny is merged in the burglary."

It is, nevertheless, clear that the prisoner may be convicted and sentenced for the larceny. Com. v. Tuck, 20 Pick. 360; State v. Cocker, 3 Harr. (Del.) 554; State v. Grisham, 2 N. C. (1 Hayw.) 12; Roscoe, Crim. Ev. 36.

It is said, however, in State v. Moore, 12 N. H. 44, that "a conviction of the burglary works the merger."

Where the two offenses are included in the same count the prisoner on a general verdict of guilty can be sentenced for the burglary but not for the larceny. Com. v. Hope, 22 Pick. 10; Josslyn v. Com. 6 Met. 240; State v. Moore, 12 N. H. 44.

Burglary may be regarded as an inclusive crime, since, when it is successful, it involves the commission of some other offense, although the conviction of such other offense is not necessary to complete the burglary, the breaking with the intent to commit the subsidiary offense being sufficient; but it is well settled that where the inducive offense is committed, the allegation of it in a count in an indictment for common-law or statutory burglary does not render it bad for duplicity. Wharton, Crim. Pl. & Pr. § 244; 1 Bishop, Crim. Pr. 3d ed. § 429; State v. Hayden, 45 Iowa, 11; State v. Ridley, 48 Iowa, 370; State v. Shaffer, 59 Iowa, 290, 13 N. W. 306; State v. Brandon, 7 Kan. 106; Oliver v. Com. 5 Bush, 376; Com. v. Tuck, 20 Pick. 356; Com. v. Hope, 22 Pick. 1; Josslyn v. Com. 6 Met. 236; Kite v. Com. 11 Met. 581; Larned v. Com. 12 Met. 240; Jennings v. Com. 105 Mass. 586; Com. v. Darling, 129 Mass. 112; Roberts v. State, 55 Miss. 421; Smith v. State, 57 Miss. 822; Davis v. State, 3 Coldw. 77; Dunham v. State, 9 Tex. App. 330; Speers v. Com. 17 Gratt. 570; Vaughan v. Com. 17 Gratt. 576; State v. Brady, 14 Vt. 353.

The commission of the subsidiary offense is evidence of the intent, and may be regarded as surplusage. Nor is the indictment bad because the subsidiary offense is insufficiently alleged. On a general verdict of guilty the defendant is to be sentenced

for the burglary only. Com. v. Hope, 22 Pick. 10; Josslyn v. Com. 6 Met. 240; and Davis v. State, 3 Coldw. 77.

On all convictions for robbery, burglary, or larceny of any goods, chattels, or other property made the subject of larceny by the laws of this commonwealth, or for otherwise unlawfully and fraudulently taking or obtaining the same, or of receiving such goods, chattels, or other property, knowing the same to be stolen, the defendant shall, in addition to the punishment heretofore prescribed for such offenses, be adjudged to restore to the owner the property taken, or to pay the value of the same or so much thereof as may not be restored, etc. Act of March 31, 1860, § 179 (P. L. 425).

It is evident from this section that the framers of the Penal Code fully recognized the rule of criminal pleading now contended for: Unless the charge of stealing the goods was contained in the count charging burglary, and the goods alleged to be stolen were therein specifically set forth and described, there would be nothing to sustain a sentence of restitution. There is no way in which the description of the goods could be made to appear without the same was a matter of record; and the record would be the indictment charging the offense. Unless the indictment set forth the articles, a sentence of restitution would be set aside by the supreme court, as was done in the case of Huntzinger v. Com. 97 Pa. 336.

A charge that the law permits evidence of good character to be submitted to the jury, no matter what might be the other testimony in the cause, and that when a doubt arises as to the guilt of the accused, such doubt is conclusive in his favor, by no means confines the jury to attaching importance to the evidence, only in cases of reasonable doubt. On the contrary, it leaves them at liberty to make it a basis for the formation of a doubt.

In the absence of request, the court below will not be reversed for what is left unsaid. Ott v. Oyer, 106 Pa. 7.

An erroneous sentence in the charge of the court, which is immediately corrected in some following sentence, will not support an assignment of error. Horton v. Chevington & B. Coal Co. 2 Pennyp. 48.

The manner of the judge in delivering his charge, even if reprehensible, cannot be reached by an assignment of error. Horton v. Chevington & B. Coal Co. 39 Phila. Leg. Int. 431.

The omission to charge upon a particular point for which no

request is made is not ground of error. Menges v. Muncy Creek Twp. 1 Pennyp. 179; Fox v. Fox, 96 Pa. 60.

If the charge, taken as a whole, barely leaves the question of fact to the jury, it is sufficient. Reese v. Reese, 90 Pa. 89, 35 Am. Rep. 634; Little Schuylkill Nav. R. & Coal Co. v. French, 81* Pa. 366.

A strong expression of opinion upon the facts, which if taken in connection with a whole charge does not amount to a binding instruction, is not ground for reversal. Johnston v. Com. 85 Pa. 54, 27 Am. Dec. 622.

It is not error to comment on the evidence, nor to express an opinion upon the weight thereof, if the facts be left to the jury. Bonner v. Herrick, 39 Phila. Leg. Int. 364.

The court will not reverse on a critical objection to the charge, if the judge has so expressed himself as to be understood by the jury. Galbraith v. Black, 4 Serg. & R. 207; Lackawanna & B. R. Co. v. Chenewith, 52 Pa. 382, 91 Am. Dec. 168.

In a criminal case a charge unexceptional in point of law, although liable to be misunderstood by the jury, cannot be assigned for error. Fife v. Com. 29 Pa. 429.

This charge is so clear, so impartial, and so merciful to the defendants, that it could stand the strictest criticism and the severest rules of construction applicable even to capital cases.

PER CURIAM:

There was no error in refusing to quash the first count of the indictment. Charging burglary with intent to commit larceny and that the larceny was actually consummated does not make the indictment bad for duplicity. It is a well-recognized form of framing a count, both in England and in this country.

The court gave due effect to the evidence of previous good character in designating it to be positive evidence which might of itself produce such reasonable doubt as may result in producing an acquittal.

We see no error in the remaining assignment.

Judgment affirmed.